*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | | |
|---|---|---|
| *REGIONAL SCHOOL UNIT NO. 51,* | ) | |
| | ) | |
| *Plaintiff/Counterclaim Defendant* | ) | |
| | ) | |
| *v.* | ) | *No. 2:12-cv-29-DBH* |
| | ) | |
| *JOHN DOE, et al.,* | ) | |
| | ) | |
| *Defendants/Counterclaim Plaintiffs* | ) | |

*RECOMMENDED DECISION ON DEFENDANTS' MOTION FOR ATTORNEY FEES*

Defendants John and Jane Doe move pursuant to Federal Rule of Civil Procedure 54(d), Local Rule 54.2, and the pertinent provision of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B)(i)(I), for an award of reasonable attorney fees and expenses incurred in an administrative due process hearing and in litigation in this court regarding the special education rights of their minor son, SM.  *See* Defendants' Motion for Attorneys' Fees and Costs ("Motion") (ECF No. 34) at 1.  They seek an award of $72,757.62, representing (i) so-called "lodestar" fees and costs of $77,646.89 through the time of the filing of the Motion (ii) plus additional lodestar fees of $1,010 incurred in preparing the reply memorandum in support of the Motion (iii) minus 7.5 percent of the total lodestar figure, or $5,899.27, to account for work performed on a claim with respect to which they did not prevail.  *See* Motion at 14; Defendants' Reply Memorandum in Support of Their Motion for Attorney's Fees and Costs ("Reply") (ECF No. 41) at 7 n.2.

Plaintiff Regional School Unit No. 51 ("RSU No. 51") objects that the lodestar figure of $77,646.89 is too high and the 7.5 percent reduction too low.  *See generally* Plaintiff's Opposition to Defendants' Motion for Attorneys' Fees and Costs ("Opposition") (ECF No. 39).

1

It argues that the lodestar figure should be reduced by $11,590, to $66,056, and that, to reflect the defendants' degree of success, this adjusted figure should be further reduced by 75 percent ($49,542), *see id*. at 5, 10, resulting in a total award of $16,514.

For the reasons that follow, I recommend that the court award the defendants attorney fees and costs in the sum of $70,657.87, reflecting an adjusted lodestar figure of $76,386.89 ($77,646.89 minus $2,270 for work performed through the time of filing of the Motion, plus $1,010 for work performed on the Reply) minus 7.5 percent, or $5,729.02, to account for time devoted to an issue with respect to which they did not prevail.[1]

## I.   Applicable Legal Standards

The IDEA "permits the award of reasonable attorney fees to a prevailing party."  *Mr. & Mrs. C. ex rel. K.C. v. Maine Sch. Admin. Dist. No. 6*, 582 F. Supp.2d 65, 67 (D. Me. 2008) (citing 20 U.S.C. § 1415(i)(3)).  "In IDEA attorney fee disputes, the courts generally have applied prevailing party principles from [42 U.S.C.] § 1988 cases."  *Id*.  To qualify as prevailing parties, IDEA litigants, like section 1988 litigants, must demonstrate that (1) they obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in the parties' legal relationship; and (3) the alteration is not merely technical or *de minimis* in nature.  *See, e.g*., *Kathleen H. v. Massachusetts Dep't of Educ*., 154 F.3d 8, 14 (1st Cir. 1998).  The party seeking a fee award bears the burden of establishing the reasonableness of the requested fee.  *See, e.g., IMS Health Corp. v. Schneider*, 901 F. Supp.2d 172, 192 n.10 (D. Me. 2012).

Fee awards to prevailing parties are determined using the so-called "lodestar" method:

> When fashioning a fee award, the district court ordinarily starts by constructing what has come to be known as the lodestar.  In general, the lodestar is the product of the number of hours appropriately worked times a reasonable hourly rate or

---

[1] The defendants requested that, if the court did not grant the Motion, it schedule a hearing to determine the amount of fees and costs to be awarded.  *See* Motion at 1.  I **DENY** the defendants' request because the parties' papers provided a sufficient basis upon which to calculate the award.

rates.  The party seeking the award has the burden of producing materials that support the request.  These materials should include counsel's contemporaneous time and billing records, suitably detailed, and information anent the law firm's standard billing rates.  The putative payor may submit countervailing evidence.  The court, usually after hearing arguments, will then calculate the time counsel spent on the case, subtract duplicative, unproductive, or excessive hours, and apply prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved).

*Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011) (citations and internal punctuation omitted).

The lodestar figure "can be reduced where the prevailing party achieves only limited success." *Mr. & Mrs. C.*, 582 F. Supp.2d at 67.  *See also, e.g., Burke v. McDonald*, 572 F.3d 51, 65 n.11 (1st Cir. 2009) ("After computing the lodestar, the district court would have been within its discretion to consider an adjustment – upward or downward – based on the results obtained by taking into account Burke's claim-by-claim success, the relief obtained, and the societal importance of the right vindicated.").  However, "[t]he IDEA cases adopt the principle that strict proportionality is not required in awarding fees":

> In § 1988 cases, courts have concluded that some victories, though nominal in amount, can represent a measure of success and serve a public good through the potential of future deterrent impact.  What is required is that the parent achieve relief on a significant claim; that it effects a material alteration in the parties' legal relationship; and that the victory is not merely technical or de minimis.

*Mr. & Mrs. C.*, 582 F. Supp.2d at 67 (citations and internal punctuation omitted).

## II.  Discussion

### A.  Lodestar Calculation

RSU No. 51 seeks reductions in the defendants' lodestar calculation of (i) $1,770 for time spent prior to the preparation of their due process hearing request, (ii) $500 for time spent by a non-attorney advocate attending a "resolution session," (iii) $6,420 for assertedly excessive time spent preparing a post-hearing memorandum during administrative proceedings, and (iv) $2,900

for time spent responding to RSU No. 51's motion to disqualify the defendants' counsel based on an asserted conflict of interest. *See* Opposition at 5-9. The defendants concede that $500 for time spent at the resolution session should be subtracted, *see* Reply at 1, and I agree with RSU No. 51 that $1,770 for pre-suit work should be as well. This results in an adjusted lodestar calculation of $76,386.89 ($77,646.89 minus $2,270 for work performed through the time of filing of the Motion plus $1,010 for work performed on the Reply).[2]

### 1. Pre-Suit Work

In seeking compensation for their attorneys' "pre-suit work," the defendants rely on the general principle that such fees are recoverable when "both useful and of a type ordinarily necessary to advance the . . . litigation to the stage it reached." Motion at 8 (quoting *Hutchinson*, 636 F.3d at 15) (citation and internal quotation marks omitted); *see also* Reply at 2-3. However, as RSU No. 51 points out, *see* Opposition at 6, this court held in 1992 that fees and costs incurred in connection with a Pupil Evaluation Team ("PET") meeting are not recoverable as part of an IDEA award, *see Fenneman v. Town of Gorham*, 802 F. Supp. 542, 545-46 (D. Me. 1992), a holding since codified in the IDEA, *see* 20 U.S.C. § 1415(i)(3)(D)(ii) ("Attorneys' fees may not be awarded relating to any meeting of [an] IEP [individualized education plan] Team unless such meeting is convened as a result of an administrative proceeding or judicial action or, at the discretion of the State, for a mediation described in subsection (e).").

In *Fenneman*, the court reasoned that, because "PET meetings are specifically designed to be informal meetings where parents, teachers and administrators sit down to work out an IEP

---

[2] "A prevailing party in a civil rights action normally is entitled to attorneys' fees incurred in the pursuit of fees under section 1988." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 340 (1st Cir. 2008). "Because litigating a fee petition is typically an uncomplicated exercise, fees for such work are often calculated at lower rates than those deemed reasonable for the main litigation." *Id.* Recognizing this principle, the defendants seek lower fees for work performed on the Motion and the Reply than on the merits. *See* Motion at 11-12; Fee and Cost Summary ("Fee Itemization"), Exh. A (ECF No. 34-1) thereto, at [20]; Reply at 7 n.2; Exh. A (ECF No. 41-1) thereto ¶¶ 6-7. RSU No. 51 has not challenged fees sought for preparing the Motion, *see generally* Opposition, and the fees sought for the preparation of the Reply are reasonable, as well.

by consensus if possible[,] . . . [t]reating them as part of the administrative hearing/litigation process will only encourage adversarial conduct, a result out of keeping with their purpose." *Fenneman*, 802 F. Supp. at 545-46 (footnote omitted).  This was true even though the parents asserted that their lawyer's and expert's preparation for, and attendance at, a PET meeting "was an important stage in the investigation of facts, the formation of a case theory and strategy, the shaping and narrowing of issues, and the gathering and development of evidence for use at the administrative hearing." *Id.* at 545.  Applying *Fenneman* and 20 U.S.C. § 1415(i)(3)(D)(ii), this court more recently rejected a claim for attorney time "spent advising the family on the PET process prior to the hearing request[.]" *Mr & Mrs C ex rel. KC  v. MSAD 6*, Civil No. 6-198-P-H, 2008 WL 2609362, at *2 (D. Me. June 25, 2008) (rec. dec., *aff'd in part, rev'd in part on other grounds*, Oct. 15, 2008).

A review of the defendants' attorneys' billing records reflects that, during the time frame targeted by RSU No. 51 – June 3, 2010, through February 16, 2011 – one of the defendants' attorneys was advising them as to an array of options, from ongoing IEP matters and IEP Team meetings to possible due process litigation, including steps to be taken in connection with such litigation. *See* Fee Itemization at [1]-[2].  Because these things were happening simultaneously, arguably all of the fees charged during the time frame during which IEP discussions continued are related to a meeting of the IEP Team.  However, even if they are not, the Fee Itemization does not clearly segregate fees related to IEP Team discussions from those that are unrelated, *see id.*, and the defendants in their reply brief continue to press for an award of the entire pre-suit amount, *see* Reply at 2-3.

For these reasons, the defendants fall short of meeting their burden of demonstrating that the contested sum is reasonably related to this litigation, and I recommend that the requested $1,770 for pre-suit work be disallowed.

## 2.  Post-Hearing Memorandum

RSU No. 51 next seeks a reduction of $6,420 in the defendants' lodestar figure for excessive time spent on the preparation of a post-hearing memorandum submitted to the administrative hearing officer who heard the parties' due process claims.  *See* Opposition at 7-8. RSU No. 51 submits an invoice of its attorney, Eric Herlan, reflecting that he accomplished this task in 20.3 hours.  *See* Exh. A (ECF No. 39-2) to Opposition.  It reasons that because the defendants' attorney, Richard O'Meara, is comparably experienced, he should have been able to complete this task equally efficiently, justifying a reduction of 21.4 hours in reimbursable time (from 41.7 hours to 20.3 hours), worth $6,420 at O'Meara's hourly rate of $300.  *See* Opposition at 8.

Nonetheless, the defendants explain that O'Meara invested more hours because, unlike Herlan, he chose to prepare, as part of his post-hearing brief, detailed proposed findings of fact with record citations (totaling approximately 27 pages).  *See* Reply at 3-4; *compare* Administrative Record ("Record") at 1320-72 *with id*. at 1374-1408.  As the defendants observe, *see* Reply at 4, the administrative record in this case was voluminous.  On such a record, preparing findings of fact with appropriate record citations is a labor-intensive task.  The defendants plausibly suggest that this exercise was a valuable one, the hearing officer having adopted in whole or in part many of their proposed findings of fact and awarded them the full reimbursement sought for SM's 2010-11 school year at Eagle Hill School.  *See* Reply at 3; *compare* Record at 1320-49 *with id*. at 1429-46; *see also id*. at 1470.

Beyond this, if one subtracts from O'Meara's total of 35.1 hours spent on the post-hearing brief the 11.9 hours devoted, in substantial part, to his preparation of proposed findings of fact, the remainder is 23.2, comparable to Herlan's 20.3. *See* Fee Itemization at [12]-[14].[3]

The defendants meet their burden of demonstrating the reasonableness of the requested fees for preparation of the post-hearing memorandum. I recommend that those fees be allowed in full.

### 3. Response to Motion To Disqualify Counsel

RSU No. 51 seeks a reduction of $2,900 for work performed in responding to its motion to disqualify the defendants' counsel, arguing that the work had nothing to do with the IDEA claim. *See* Opposition at 8-9. The defendants rejoin that the work is compensable because, without it, they would have been forced to expend resources to bring new counsel up to speed as the case was nearing its conclusion. *See* Reply at 4-5. They contend that the expense was "reasonable and necessary, as it helped to produce and protect the favorable result the Does ultimately obtained through this litigation." *Id*. at 5.

A "fee award should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief." *Schneider*, 901 F. Supp.2d at 185 (citations and internal quotation marks omitted) (citation and internal quotation marks omitted). On the other hand, a "fully compensatory fee" normally "will encompass all hours reasonably expended on the litigation[.]" *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). "In assessing whether hours were reasonably expended, the relevant issue is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have

---

[3] The remaining 6.6 hours were billed by attorney Nicole Bradick. *See* Fee Itemization at [12]-[14]. RSU No. 51 makes no arguments regarding her work on the post-hearing memorandum. *See* Opposition at 7-8. In any event, the total of 41.7 hours for a post-hearing memorandum containing detailed proposed findings of fact is not unreasonable.

engaged in similar time expenditures." *Short v. Manhattan Apartments, Inc*., 286 F.R.D. 248, 256 (S.D.N.Y. 2012) (citation and internal quotation marks omitted).

I am persuaded that fees incurred in opposing the motion to disqualify were reasonably expended on the litigation and bore a relation to the grant of relief.

RSU No. 51 filed its motion to disqualify the defendants' counsel on October 26, 2012, approximately one month after the defendants filed their reply brief on the merits of the IDEA case. *See* ECF Nos. 24, 26. The defendants responded to that motion on November 16, 2012. *See* ECF No. 27. On November 29, 2012, I issued my report and recommended decision on the merits, *see* ECF No. 28, to which neither side ultimately filed an objection. On January 28, 2013, RSU No. 51 withdrew its motion to disqualify, and the following day, Judge Hornby affirmed my recommended decision on the merits. *See* ECF Nos. 30-31.

While, as it happened, the defendants' response to the motion to disqualify had no effect on the outcome of the IDEA case, that turn of events was not predictable when the response was filed on November 16, 2012. That response was filed about two weeks before I issued my recommended decision on the merits. On November 16, 2012, the defendants reasonably could have anticipated a need to object to the recommended decision to come and/or respond to an objection filed by RSU No. 51. To obtain new counsel at that juncture not only would have been expensive but also might have jeopardized the quality of any briefing in support of or opposition to my recommended decision. The defendants reasonably chose to expend resources opposing the motion to disqualify to maximize their chances of success in this IDEA litigation. I recommend that fees incurred in that endeavor be allowed in full.

### B.  Adjustment for Degree of Success

RSU No. 51 finally seeks a substantial reduction to account for the defendants' degree of success, arguing that:

1.      In filing their due process request in June 2011, the defendants sought not only reimbursement for their private unilateral placement of SM for the 2010-11 school year but also "public funding for the continuation of an appropriate private educational placement for SM for the remainder of his high school years."  Opposition at 1-2 (quoting Record at 5).

2.      While, at the pre-hearing conference, the defendants narrowed these issues, alleging violations of SM's right to a free appropriate public education ("FAPE") only for the period through his eighth grade year (2009-10) and his first year of high school (2010-11), when he was unilaterally placed at Eagle Hill School, RSU No. 51 sought a hearing on the 2011-12 school year, and the cases were consolidated for hearing.  *See id*. at 2; *see also* Record at 67, 98-99.[4]

3.      There were three distinct periods at issue in this case: (i) September 2007 through March 2010 (SM's sixth and seventh grade years and part of his eighth grade year), (ii) March 2010 through June 2011 (the end of SM's eighth grade year and his entire ninth grade year), and (iii) September 2011 through June 2012 (SM's 10th grade year), plus a "stay put" period from September 2012 through June 2013 (SM's 11th grade year).  *See* Opposition at 10-12.  In RSU No. 51's view, the "stay put" period was at issue because, had the defendants prevailed as to the 2011-12 school year and the hearing officer concluded that SM's needs were such that he

---

[4] RSU No. 51 points out that, even after the prehearing conference, the defendants sought "any other remedy" that the hearing officer might consider appropriate.  *See* Opposition at 2 n.1; Record at 67.  However, the only relief that they specifically requested was reimbursement for Eagle Hill School costs for SM's ninth grade year.  *See* Record at 67.

required the residential placement chosen by the family, he could have continued in that placement through 2012-13 pursuant to the IDEA's "stay put" provision. *See id*. at 11-12.[5]

4.      The defendants won only as to the first of these four periods. *See id*. at 10, 12-13. Hence, the lodestar figure should be reduced by 75 percent. *See id*. at 10. Alternatively, "if the stay put potential of the case is too speculative," the defendants won only as to one of three relevant periods, and the lodestar figure should be reduced by two-thirds. *See id*. at 13.

5.      The requested reduction in the lodestar figure is warranted for one further reason: the family did not obtain any change whatsoever in the special education programming offered to SM by RSU No. 51. *See id*. at 14-15. For all periods after RSU No. 51 identified SM as eligible for special education in March 2010, both the hearing officer and the court ruled that RSU No. 51 had offered him a FAPE. *See id*.

I conclude that the defendants make a more persuasive argument in favor of a modest reduction in the lodestar figure (7.5 percent) than RSU No. 51 makes in favor of a more drastic one.

RSU No. 51's argument minimizes the fact that, at the due process prehearing conference on August 9, 2011, the defendants narrowed the scope of their due process complaint. As of that time, the only *specific* remedy that they sought was reimbursement of the costs of the 2010-11 unilateral placement at Eagle Hill School, either as compensatory education for the denial of a FAPE from September 2007 through March 2010 or as a direct remedy for the denial of a FAPE during the 2010-11 school year. *See id*. at 67, 1320. On the first of those alternative bases for relief, they were awarded the remedy sought. *See id*. at 1470; ECF No. 28 at 1-2; ECF No. 31.

---

[5] The stay put provision of the IDEA requires that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child[.]" 20 U.S.C. § 1415(j).

While the defendants lost on the issue of whether a FAPE was denied to SM during the 2010-11 school year, the loss was immaterial: they had advanced the argument only as an alternative basis for their requested relief.  *See* Motion at 2, 12-13; Record at 67, 1320.  As RSU No. 51 acknowledges, *see* Opposition at 13, the rejection of an alternative ground for relief does not justify reduction in a fee award, *see Hensley*, 461 U.S. at 435 ("Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.") (footnote omitted).

While the defendants also lost on the issue of whether the special education program proposed for SM during the 2011-12 school year provided a FAPE – a claim pressed by RSU No. 51 during administrative proceedings that was the subject of their counterclaim in this court – they acknowledge that their lodestar figure should be reduced to account for work performed thereon.  *See* Motion at 4, 14.  Based on an analysis by O'Meara, they reasonably propose that the reduction be tied to the relatively small percentage of time their counsel devoted to that issue, an estimated 7.5 percent.  *See id*. at 14; Exh. A (ECF No. 34-2) thereto, ¶¶ 18-19.  RSU No. 51 does not challenge that time estimate, instead arguing for a significantly greater reduction using a different methodology.  *See generally* Opposition.

RSU No. 51's methodology is fundamentally flawed.  As the defendants argue, "[t]he issue in a fee petition case is not how many periods of FAPE are being contested, but what result the parents were seeking through the litigation." Reply at 6 (footnote omitted); *Hensley*, 461 U.S. at 435 ("The result is what matters.") (footnote omitted).

Moreover, even if the methodology were supportable, its application would not be.  RSU No. 51 inexplicably weighs the three or four relevant time periods evenly, overlooking the fact

11

that the period as to which the defendants won, encompassing all of SM's sixth and seventh grade years and most of his eighth grade year, is considerably longer than any of the other periods. RSU No. 51 also seeks to add a fourth period never actually litigated, the 2012-13 school year, on what indeed proves to be too speculative a premise. The defendants would not have been entitled to stay-put public funding for the 2012-13 school year because, as they explain, they chose during 2011-12 to place SM at a non-special-purpose school, Brewster Academy, for which they did not seek public reimbursement. *See* Reply at 6 n.1.

The bottom line is that the defendants won the entirety of the relief that they specifically sought: reimbursement for tuition at Eagle Hill School for the 2010-11 school year. They correctly note that, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee, and the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id*. at 6 (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 562 (1986)).

That they obtained no change in SM's special education programming for periods when SM actually was offered such programming does not alter the calculus. Their central argument was not that the programming was too little, but that it was too late, depriving their son of needed services for nearly the entirety of his middle school years. *See generally, e.g.*, ECF No. 20. Their victory on this point materially altered their legal relationship to RSU No. 51. It was in no sense a technical or *de minimis* victory for them, their son, or future RSU No. 51 students in need of special education.

### III. Conclusion

For the foregoing reasons, I recommend that the Motion be **GRANTED IN PART**, to the extent that the defendants be awarded attorney fees and costs in the sum of $70,657.87, reflecting

an adjusted lodestar figure of $76,386.89 ($77,646.89 minus $2,270 for work performed through the time of filing of the Motion, plus $1,010 for work performed on the Reply) minus 7.5 percent, or $5,729.02, to account for time devoted to an issue with respect to which they did not prevail, and otherwise **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of June, 2013.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

13